Chief Justice Robertson
delivered the opinion of the court.
Tirrs is an appeal from a judgment for damages in favor of Samuel Oldham, in an action of covenant instituted by him, against Silas Tribble, and Abner Oldham, on the following writing:
“Know all men by these presents, that we, Silas Tribble and Abner Oldham, administrators of John White, deceased, have this day sold to Samuel Oldham two negroes, named Rhoda and Lawson, which negroes we warrant to be sound in body and mind, and slaves for life, and the title^to said negroes good; for which slaves said Samuel Oldham has executed his note payable to us, on the 7th of October next, f<5r six hundred dollars. Given under our hands, this 23d of. September, 1826.
ABNER OLDHAM.
SILAS TRIBBLE.
The breach assigned was the unsoundhess of Rhoda at tlie date of the bill of sale.
The appellants demurred to tlie declaration, a%d filed eight pleas to the action.
The demurrer to the declaration was overruled; Issue was taken on the first plea which denied the alleged unsoundness; and demurrers to the other seven pleas were sustained.
The validity of the declaration, and the sufficiency of the pleas, are the only points presented for consideration.
I. The only objection which has been made to the declaration, or which could be plausibly urged, is, that tb.e writing declared on is not a covenant, and therefoi'e, that case and not covenant was the proper action.
As covenant can be maintained only on a deed or speciality, and as, according to the common law, a writing without seal is not a deed or speciality; it is undeniable that, as the contract in this case is without *138 scab the common law would not allow an action of covenant to be sustained, for a breach of any of its stipulations.
Act of’12 the dignify of sealed instrunoTa’ r?o executed a-such^wreieases and conveyanees.
uchwwledef■merit of a contract, latió™undertaking or pionviee, it is not, by the act of ’12, t0 f'ke scaled writin»-. °
An ordinary receipt or a loiter simply acknowledging the terms of a contract for land, is not raised to the dignity of a sealed eontrai t by the act of ’12.
A warranty of t-ontairmd in a bill of sale, is embraced ,b;ht!gen^ oi? nant wiW C]i<T for a breach of st*
*138 Unless, therefore, the eighth section of art act of 1812,(1 Dig.- 264) embraces this writing, and elevates it to the dignity, and imparts to it the efficacy of a sealed instrument, the action was’ misconceived.
The section provides that, “All writings hereafter e:secuted without a seal or seals, stipulating for the payment of money, or for the-performance of any act or acts, duty or duties, shall be placed upon the same foot*nS W^1 seale^ writings containing the Hie slipululions,” &c.
This court has- never directly decided whether or not this enactment applies to such a contract as that now under consideration. It has decided that the act does not apply to executed, agreements, such as releases and conveyances; Shortridge, et al. vs. Catlet, et al. I Marshall, 587.
R f*as also been decided, that there-may he written evidence of a contrast, which nevertheless will not have effect of a scaled contract: for example, a written acknowledgment of a contract, but which contains no stipulation, undertaking, or promise-, Kibby vs Chitwood’s administrator, IV Mon. 93.
gFhese decisions we approve as so md expositions of the statute, according to both its letter and spirit. The legislature did not mean to dispense with a seal in those cases in which it was required by the common law.
And'therefore, executed agreements such as releases and conveyances, are not affected by the act of 1812. Nor did the legislature intend to impart the effectiveness of a seal, to writings without seal which contain no “stipulation,” but merely operate as an admission of a fact. And therefore, an ordinary receipt, or a letter simply acknowledging the terms of a contract for land, is not entitled to the character of a sealed contract.
No decision which has been yet given operates directly and conclusively on the character of the bill of sale in this case..
But we are of opinion that it is embraced by thq act of 1812.
Ulrica juris, a warranty is contract!
A warrantv soundness,y a’oon.taine<t ¡a J an «/-contract,
Act of’12 -¿1-al^niwof116 sealed-instrumentsyoH ex-menlñnfvrC ting without seal, to the ™hioha ^ai -was not essentía!,
^hichf raises unsealed writips8, tsthe tingsshouMRe *" beneficially..
1st. We aré enclined-ío think that the letter -of the act includes it. The warranty of soundness is a contract, which binds the warrantors to indemnify the warrantee, in the event of unsoundness. Although ft as not strictly a promise to pay money, nor to de any specified “act” or “duly,” it is an undertaking in effects ■do something i and will oblige the appellants “to pay .money,” or perforin some “act” or “duty;” and is therefore, in its legal-effect, a contract to do some act.
It cannot be properly denominated an “executed” «agreement. The promise is made; the liability is prospective; the warranty imposed responsibility and duty, on contingency.
It must be classed with “executory” contracts. The simple warranty did not pass any substantive think from the appellants to the appellee, as a release or conveyance would have done. Contracts are either executed or executory. “Stricti juris,” a warranty'is not an executed agreement; and therefore, it must be contract to do some act or duly. A duty results from it; and an obligation to perform some act necessarily results from it; and this obligation is not merely implied. It is express. The warranty is a guaranty or -assurance of indemnity. It is a “stipulation,” and must be construed according to its legal effect; and thus interpreting it, it must be a contract to do some “act” or “duty;” see Hamilton vs. Wagner, II Marsh. 331.
2d. It seems to this court, tbat it was the intention ef the legislature to elevate to the dignity of contracts under seal, all executory agreements in writing without senl, and to the validity of which a seal was not essenil'd!. The terras used to exemply the contracts intended to he affected, were deemed sufficiently descriptive and comprehensive. Tney are such indeed as are employed generally in the most approved and exact elementary writers in defining executory agreements, and all cov-Minis; and if a particular contract should not precisely fit. either of the descriptions, as the statute should be construed liberally and beneficially, and as all executory agreements are embraced in its policy and object, the written warranty should have all the effect of a writing under seal.
We infer that it was the intention of the legislature to include all executory agreements not sealed.
A bill ofsale, so far as H passes title, is an executed contract. ,
A seal -is not necessary to the effectiveness of a bill of sale.
ihll unsealed contracts in arovalitT'and ■operative without seals, the act°of ¡J2 to the dignity of sealed inActofn,l2 which ele-’ vates unsealcd writings to the dignity of sealed instrumTchspense •with seals, where the required 'aW pfhero-.
1st. From the copeousncss of the description given* from which it appears that an effort was made to embrace all such agreements of every kind.
2d, From the fact that there could be no motive for including, or for excluding one executory undertaking rather than another; the same reason of policy applied equally to all.
Rut a bill of sale so far as it passes title may be considered an executed agreement. If it be so, the consequence will not necessarily follow, that the warranty is also an executed agreement.
A seal is not necessary to the effectiveness of a bill of sale. And if the warranty, which is executory in its effect, be of the s'ame legal grade, as that of the executed part of the bill of sale, the consequence would be its degradation to the level of a parol contract.
We are inclined to think that the fair and true interpretalion of the act of 1.812,is, that all contracts in wl'd’DS without' seal, which are valid and operative, are raised to the dignity of settled writings. Whilst the legislature did not intend to dispense with seals in cases *n which the common law required them, it is not unreasonable or inconsistent to suppose that they intended that all written contracts which would be opérative .without seals, should be, in all respects, as effectual as if seals had been annexed to them. But-however this may be is not material,
The warranty of soundness is a“contract; it is “ex-ecutory,” because it is an undertaking. In its fulfilIlaeD<’ some “ací:” or must be “performed;» and consequently, covenant is the proper action for a breach of the contract, because it is, even according *° *he letter of the statute, a contract which will oblige the doing of some act, or the performing of some consequential duty; and it is not materia] whether this be tiie express undertaking, or only the legal' effect of the contract.
II. The seven pleas, to which demurrers were sustained, may be reduced to three classes, presenting in various forms, only three distinct matters of defence!
1st. That the warranty of soundness was inserted •m-4he bill of sale through mistake.
Mistake in the ^'ten con-& tract cannot he pleaded or ^Vthe illegality or vice of tho “^beplea°d et1 at imo.
When the ex . cculion of a written con-tr?ct ail" 13 fraud, its stqnilatioiis cannot be dentcouvt 0 ‘
"2d. That the sale of the slaves was made some time before the date of the bill of sale, and was without warranty. And therefore, the warranty was without consideration.
3d. That there was no warranty of soundness at any time after the sale which was prior to the date of the bill of sale, and therefore the appellants were not responsible for unsoundness at the date of the writing.
None of these matters could be pleaded in bar of the action.
1st. Mistake in the execution of a written contract, is a fit subject for the congniznnce of the chancellor, but cannot be pleaded or proved in a common law action. Fraud, which vitiates any thing, or the illegality or the vice of the consideration may be shown and made available at law, as well as in equity. But when the execution of a written contract is admitted without the imputation of fraud, its terms and slipulations cannot be contradicted, varied or denied in a court of law.
. This principle which applies most emphatically to specialties and to writings required by the statute of frauds and perjuries, is dlso applicable to all contracts in writing.
In the Countess of Rutland’s case, (5th Reports, 28,) Coke said, “it would be inconvenient, that matters in writing made by advice and on consideration,and which finally import the certain truth of the agreement of the parties, should be controlled by an averment of parties to be proved by the uncertain testimony of slippery memory; and it would bo dangerous to purchasers and to others, in such cases, if such nude averments against matter in writing should be admitted.”
“The written instrument must be considered as containing the true agreementbelween the parties,and as furnishing better evidence than any which can be supplied by paid.” Philips’s Evidence, I American Edition, 441, and the authorities there cited. This is the doctrine of the common law; see the host of authorities cited in 4th H. and M. 85.
This principle of law, as well as some of the authorities referred to, would not allow a party to a written
No mistake in ithc execution of a writing, which was not superinduced by fraud or by the misreading of the instrument to the party, can be pleaded in bar of an action at law founded upon the writing. No mista!. in the execution of a writing, can be pleaded in bar of an action founded upon the writing; unless, it be such a mistake as will sustain a plea of “reore est factum
When by fraud or misrepresentation, a written memorial of a contract essentially variant from the agreement actually made, has been imposed on a party, _ the writing is not tus act or deed; and in such cases the fraud or misrepresentation may be proved without contradicting the writing.
Bare fact, that the contract in writing varies from the parol understaningof either or both parties, will not sustain a plea of non estfactum.
*142 agreement, to avail himself, al lazo, of an alleged mis'* take in its terms or import.
It is suggested in Starkie on Evidence, that a mistake in a written contract may be proved at law or in chancery, but that it is more peculiarly the subject of the chancellor’s cognizance.
This must mean a mistake affecting the whole contract; and even then, the proposition is not maintainable without qualification; for such a doctrine is not, without qualiiication, reconcileable with principle or practice, and would certainly be an anomaly in the law. Fraud or mistake, in the execution of a writing, may furnish sufficient ground for avoiding it; but it is not every species of mistake, that can have such effect. No mistake, which was not superinduced by fraud or by the misreading of the instrument to the party, can be availably pleaded by him in bar of an action at law-founded upon the writing, or in any other foim or for any other purpose. Unless the mistake be such as will sustain a pica of “non est factum” a court of chancery alone can afford releif.
When, by fraud or misrepresentation, a written memorial of a contract essentially variant from the agreement actually made, shall have been imposed on a party, the deed or writing is not his; ilisnotobligatory. And in such cases the fraud or misrepresentation may be proved without contradicting the written evidence.
But the bare fact, that the contract in writing varies from the parol understanding of either party or both, would not sustain a plea of non est factum; and such evidence alone, would be inadmissible. The parties reduce their contract to writing, because they are unwilling to trust the frail memory of men; and they thcrefore intend that the written shall he the only, or the best, evidence of the contract. The verity of the writing cannot be attacked by parol evidence of an understanding variant from that expressed by the writing. Such evidence would contradict the writing; its direct tendency would be to show, that the contract acknowledged by writing, was not the agreement actually intended. If such testimony he admissible in a court of law, all- distinction in the degrees of evidence must be confounded. Evidence merely tending to prove a discrepancy between the written memorial and the parol *143 understanding of the contract would not necessarily falsity the writing, or show that it does not contain the true contract. The supreme court of New York, and that of Massachusetts, as well as those of some other slates, have decided that such evidence is not competent in a court of law. In Fitzhugh vs. Runyion, (VIII Johnson, 292) the court said, “the parol proof to show that there was a mistake in the written contract, was inadmissible. It is a -well settled rule that such proof is never admissible in a court of law, to contradict a writing.
The verity of a writing cannotbe attacked- by parol evidence of an understanding variant from that expressed by the writing Parol evidence, is inadmissible to prove a mistake in a written contract; uutess, the mistake is such as would be available under the plea of non est factum. Although, there has been no fraud or misreading, courts of equity, have pow-er to correct or relieve from mistakes in written contracts. When a mistake affects the contract in part only, chancery is alone competent to give relief.
This we consider the true doctrine, when the mistake is not such as will be availing under a pica of non est factum. Starkie’s, suggestion may be understood as intended to apply to cases in which the mistake would be available under non est factum. But nevertheless, even when there has been no fraud or misreading, courts of equity have power to correct, or relieve from mistakes in written contracts. How they obtained this power, we need not now show. An inquiry into such a subject would be more curious than useiul.
When the mistake affects the contract only in part, chancery is alone competent to give relief. A common law court could not adjust the rights of the parties. It is true that the rules of evidence are the same in courts of chancery, and in courts of common law. But the chancellor may appeal to the conscience; and will not allow the doctrine of estoppel, by deed, to opei’atc inflexibly. However, his power to correct mistakes in written contracts, is now firmly established; although such a power may be as anomalous, as it is peculiar. But he will not modify the written contract, unless the proof of mistake be strong and conclusive.
In this case, the plea does not intimate that the bill of sale was misread to the appellants; or that the alleged mistake resulted from fraud. The appellants meant by their plea, on!}' to say that they signed the bill of sale withput knowing that it contained a covenant of warranty. Such a defence was inappropriate and inadmissible.
2d. If it be true that the sale of the slaves was complete, prior to the date of the bill of sale; as alleged ix) one of the pleas, and that, in that sale, there was n*¡ *144 warranty of soundness, there could be no doubt' that the warranty in the bill of sale was without consideration.
If the consideration is expressed or admitted by the writing,' it cannot be denied or im-. peached by plea.
Usual clause in a bill of salo “have this day sold” estops vendors to deny that the sale was made on that day, or to averthat it was made on a preceding day-
A deed takes effect from delivery.
A different date from that stated in a deed may be proved; because, the date of a deed is not material. Extrinsic evidence is admissible to prove that the consideration has not been paid, although the deed acknowledge its payment.
A receipt for money may be explained. A receipt incoporated in a deed for land may as properly be explained as receipt on a separate piece
But the consideration, being expressed or admitted, by the writing, cannot be dented or impeached by plea.
In this case, the writing says, “this day soldThe parties are estopped, by that acknowledgment, to deny that the sale was made on that day, or to aver that it had been made and completed on a preceding day.
The date of a deed is not material. The-deed takes effect from delivery; and therefore, a date different from that stated in die deed may be proved. But the question here is not when the bill of sale was executed, but when was the sale made? Was it made when the bill of sale was delivered or before? The written evidence proves that it was made, when the contract was reduced to writing. Of this fact therefore, the bill of sale is conclusive evidence in this case.
We have decided that extrinsic evidence is admissible, to prove that the consideration had been paid; although the deed acknowledges its payment. But the principle of that decision will not apply to this case, and is perfectly consistent with the reason and authorities of the law. A receipt for money maybe explained.
This exception from the general rule of law is well-established; and the reasons which justify the exception are familiar and reconciliable with the principle of the rule itself. No reason is perceived why a receipt incorporated in a deed for land, may not be explained, as well as one by itself on a separate piece of paper. Besides, it is the common usage to acknowledge the receipt of the consideration, in a deed, whether it had been actually paid or only assumed to be paid. Tiiis is not the esscence ofthp contract,nor is it essential to the deed. Such deed Is therefore, not conclusive evidence of the payment. And such was our decision; see Gully vs. Grubbs, I. J. J. Marshall, 391, and Shepherd vs Little, XIV Johnson, 210.
For these and other peculiar reasons, a vendor may retain and enforce his equitable lien for the consideration, although his deed had acknowledged the receipt of the consideration; II Pr. Williams, 294; I Mad¿,. Chy 129.
of pau-er may. Vendor may enforce his.cquitable lion ior the consideration, although his deed acknowlCOnSideration.
Owsley and Capreton, for appellants; Turner, for appellee.
But tbe same reasons do not apply to the auknowb snent, “we have this day sold.” if the parties were allowed to contradict such an acknowledgment, the -distinction between written and v.erbai testimony would be virtually abolished, and the door to perjury opened wide. The time when the warranty was made is essential; and therefore, the time, when the bill of sale states that the contract of sale was made, is also estcntial.
3d. The sáme reasoning applies equally to the third classification of the pleas; and therefore, the same conclusion must, as to that, he established.
The doctrine of estoppel precludes the appellants from pleading the matter relied on in the second and third classes of pleas; or rather compels the court to decide that the demurrers to them were rightly sustained; see Burdet’s ex'r. vs. Burdet, II Mar. 144.
If the appellants are entitled to any relief from the judgment against them, it must be sought in a court of •equity.
Judgment affirmed with costs and damages.’